**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 13a0134n.06**

**No. 11-2357**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| In re: RICHARD K. MILLER | ) | |
| Debtor | ) ) ) | **FILED**<br>*Feb 05, 2013*<br>DEBORAH S. HUNT, Clerk |
| _____ | ) ) | |
| STATE BANK OF FLORENCE, | ) ) | |
| Plaintiff – Appellant, | ) ) | ON APPEAL FROM THE BANKRUPTCY<br>APPELLATE PANEL |
| v. | ) ) | |
| RICHARD K. MILLER, | ) ) | OPINION |
| Defendant – Appellee. | ) ) ) | |

Before: COOK and STRANCH, Circuit Judges, and STAMP, District Judge.[*]

**JANE B. STRANCH, Circuit Judge.** The State Bank of Florence, located in Wisconsin ("the Bank"), appeals from the decision of the Bankruptcy Appellate Panel ("BAP") affirming the bankruptcy court's decision to deny the Bank relief from the automatic stay and to deny its objection to the third amended Chapter 13 plan of the debtor, Richard K. Miller ("Miller"), a Michigan resident. The question before us is whether the Bank's credit bid at a Michigan sheriff's sale held after the Bank foreclosed by advertisement on some of Miller's property extinguished his entire debt

_____

[*]The Honorable Frederick P. Stamp, Jr., Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

to the Bank.  The bankruptcy court determined that it did and, because Miller's debt was satisfied,

the Bank did not have a claim against him and could not seek relief from the automatic stay in order

to execute on a pre-petition foreclosure judgment the Bank obtained against Miller in Wisconsin.

For the reasons explained below, we AFFIRM.

## I.  FACTS

Miller owned a home in Florence County, Wisconsin, known as the "Spread Eagle property."

On October 16, 2006, Miller signed a promissory note to the Bank in the principal amount of

$221,444.29, secured by a mortgage on the Spread Eagle property ("the Wisconsin mortgage").  The

Wisconsin mortgage included a clause providing that it secured the October 16 promissory note as

well as all of Miller's obligations, debts, and liabilities then existing or arising later.  On January 20,

2007, Miller signed a second promissory note to borrow $400,000 from the Bank, pledging as

collateral his Moon Lake residence and three 40-acre parcels of land located in Michigan.  Both

promissory notes stated they were governed by Wisconsin law.

When Miller fell behind on his mortgage payments, the Bank's senior credit officer, Clyde

Nelson, decided in 2008 to begin foreclosure proceedings against Miller's properties.  An

experienced banker, Nelson had foreclosed mortgages in Wisconsin and Michigan since 1980.  The

Bank hired counsel in each state to handle the Miller foreclosures.

On April 4, the Bank commenced a judicial foreclosure proceeding in Wisconsin state court,

and on April 10, the Bank commenced a non-judicial foreclosure by advertisement in Michigan.[2]

---

[2]Michigan statute permits foreclosure by advertisement if specific circumstances exist, including that no "action or proceeding has . . . been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or proceeding has been discontinued[.]"  M.C.L. § 600.3204(b).  Although the Bank started the Wisconsin judicial foreclosure proceeding before beginning the Michigan statutory foreclosure,

The Bank twice published a notice of foreclosure sale for the Michigan properties. The notices expressly stated that no other legal or equitable proceedings had been instituted to recover Miller's debt, although the equitable Wisconsin judicial foreclosure proceeding had commenced.

Miller was at that time a Wisconsin resident. He did not defend the judicial foreclosure in Wisconsin, nor was he involved in the Michigan foreclosure by advertisement. On May 14, he filed a Chapter 13 petition in Wisconsin bankruptcy court. The automatic stay required postponement of the Michigan foreclosure sales. Shortly thereafter, Miller dismissed his bankruptcy petition, sold the Moon Lake property in Michigan, and paid the proceeds of that sale to the Bank to reduce his debt.

On July 15, the Bank obtained a foreclosure judgment in state court on the Wisconsin mortgage in the amount of $407,914.04 plus interest, attorney's fees and costs.[3] On July 31, the Bank published a new notice of foreclosure by advertisement in Michigan scheduling an August 8 sheriff's sale of the three 40-acre parcels. This notice also erroneously stated that no legal or equitable proceedings had been commenced to recover the debt secured by the mortgage.

To decide what amount to bid at the sheriff's sale, Michigan counsel conferred with Nelson, who informed counsel that Miller owed the Bank a total of $413,560.27 on the Wisconsin and Michigan promissory notes. Counsel advised Nelson that the Wisconsin promissory note was not secured by any Michigan mortgage. After this conversation, Michigan counsel attended the sheriff's sale on behalf of the Bank and credit bid the entire amount of Miller's debt to the Bank in the amount of $413,560.27. Although the record does not disclose the value of the three 40-acre parcels

---

the Wisconsin action was instituted in equity, not at law. *See Wilson v. Craite*, 210 N.W.2d 700, 703 (Wis. 1973) (observing courts of equity approve foreclosure sales).

[3]A one-year redemption period applied to the foreclosure judgment. Wis. Stat. Ann. § 846.10(2).

of land at the time of the sheriff's sale, it appears that the Bank's credit bid created a surplus between $172,500 and $187,500. The Bank entered the credit bid of $413,560.27 in its books and records, but the Bank did not pay the bid surplus to the sheriff to be paid to Miller, nor did the Bank credit the surplus to reduce Miller's debt to the Bank.[4]

The sheriff's deed, which was drafted by the Bank's Michigan attorney, was recorded in Michigan. The sheriff's deed specified that the three 40-acre parcels were sold to the Bank as highest bidder for $413,560.27, and that the deed would become operative upon expiration of the one-year redemption period.[5] The deed included the affidavit of the auctioneer, who served as an undersheriff with the Dickinson County Sheriff's Department. He averred that the "said sale was in all respects open and fair; and that I did strike off and sell said lands and tenements to said bidder, which purchased the said lands and tenements fairly, and in good faith, as deponent verily believes." Neither the Bank nor Miller took any action to set aside the foreclosure by advertisement.

Nothing transpired for approximately one year. Miller did not redeem the Wisconsin property by July 15, 2009. The redemption period on the three 40-acre parcels in Michigan was set to expire on August 8, 2009. The Bank scheduled a Wisconsin foreclosure sale for August. That sale did not proceed because, on August 3, Miller sought Chapter 13 bankruptcy protection for a second time. Having moved his residence from Wisconsin to Michigan, he filed a Chapter 13

---

[4]Michigan statute provides in pertinent part that, "[i]f after any sale of real estate, made as herein prescribed, there shall remain in the hands of the officer or other person making the sale, any surplus money after satisfying the mortgage on which the real estate was sold, and payment of the costs and expenses of the foreclosure and sale, the surplus shall be paid over by the officer or other person on demand, to the mortgagor, his legal representatives or assigns." Mich. Comp. Laws Ann. § 600.3252 (2009). The Michigan mortgage also provided that any surplus must be paid to Miller.

[5]Miller had one year under Michigan law to redeem the property. Mich. Comp. Laws Ann. § 600.3240(12) (2009).

petition in Michigan bankruptcy court. The automatic stay precluded further action on the Wisconsin foreclosure. Upon the filing of the bankruptcy petition, the Michigan redemption period for the three 40-acre parcels was extended by sixty days. 11 U.S.C. § 108. At the conclusion of the extended redemption period, the Bank cancelled Miller's Michigan promissory note and made an entry on the Bank's books indicating that the Bank owned the three 40-acre parcels.

The Bank claimed below that, as of August 1, 2009, Miller owed the Bank $256,162.52 on the Wisconsin note and $185,013.85 on the Michigan note, for a grand total of $441,176.37, including principal, interest, and late fees. At the evidentiary hearing held in September 2010, the Bank claimed that the portion of Miller's debt attributable to the Wisconsin note and mortgage had increased to $299,246.93. However, an appraisal that was prepared for the Bank in December 2007, before real estate prices declined, assigned a fair market value of $284,000 to the Spread Eagle property. Thus, the Bank argued that the automatic stay should be lifted for cause to allow it to pursue the Wisconsin foreclosure judgment and because the Bank lacked adequate protection.

The bankruptcy court determined that Miller did not owe the Bank any amount of money because, applying either Michigan or Wisconsin law, the Bank's credit bid for the total amount of Miller's debt at the Michigan sheriff's sale satisfied the entire debt. *In re Miller*, 442 B.R. at 628–37. Thus, the bankruptcy court lifted the automatic stay only to allow the Bank to dismiss its Wisconsin foreclosure judgment with prejudice, release the Wisconsin promissory note and mortgage, and turn over the Spread Eagle property to Miller free and clear of any debt. *Id.* at 637. The court denied the Bank's motion for stay pending appeal, but later deferred ruling on confirmation of Miller's third amended Chapter 13 plan pending the outcome of the appeal.

## II. JURISDICTION

We have appellate jurisdiction of "all final decisions, judgments, orders, and decrees" entered by the BAP. 28 U.S.C. §§ 158(a), (b), (d)(1); *Buckeye Retirement Co. v. Swegan (In re Swegan)*, 555 F.3d 510, (6th Cir. 2009). The BAP held that the bankruptcy court's order denying the Bank's motion for relief from the automatic stay is a final, appealable order. *In re Miller*, 459 B.R. 657, 661 (B.A.P. 6th Cir. 2011) (citing *Tidewater Fin. Co. v. Curry (In re Curry)*, 347 B.R. 596, 598 (B.A.P. 6th Cir. 2006)). The BAP also held, however, that the bankruptcy court's order denying the Bank's objection to Miller's third amended Chapter 13 plan is not a final, appealable order. *Id.* (citing *Davis v. Green Tree Servicing, LLC (In re Davis)*, 386 B.R. 182, 184 (B.A.P. 6th Cir. 2008)). Nonetheless, the BAP exercised its discretion to construe the Bank's notice of appeal as a motion for leave to appeal, granted the motion, and decided the appeal. *See id.* at 661–62 (citing 28 U.S.C. §§ 158(a)(3), (b); Fed. R. Bankr. P. 8003(c); *DaimlerChrysler Servs. N. Am. LLC v. Taranto (In re Taranto)*, 365 B.R. 85, 87 (B.A.P. 6th Cir. 2007)). Because the BAP's decision is final, we have jurisdiction to entertain the appeal from that decision.

## III. STANDARDS OF REVIEW

We independently review the decision of the bankruptcy court that has been once reviewed by the BAP. *See Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 433 (6th Cir. 2004). In doing so, we examine the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *Id.* We review the bankruptcy court's decision to deny relief from the automatic stay for an abuse of discretion. *See Laguna Assoc. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assoc. Ltd. P'ship)*, 30 F.3d 734, 737 (6th Cir. 1994).

6

## IV.  ANALYSIS

### A.  Miller's failure to object to the Bank's proof of claim

The Bank first argues that Miller did not object to the Bank's proof of claim.  Consequently, the bankruptcy court should have allowed the Bank's claim under 11 U.S.C. § 502(a), which provides:  "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  Ordinarily, a secured creditor like the Bank is "not required to file a proof of claim to maintain its interest in the collateral to which its security interest attaches," but if the "creditor's lien on the collateral exceeds the value of the property, that creditor has a partially unsecured claim and must file a proof of claim with the bankruptcy court if it wishes to receive any distribution from the estate to compensate for this deficiency." *PCFS Fin. v. Spragin (In re Nowak)*, 586 F.3d 450, 455–56 (6th Cir. 2009).  Federal Rule of Bankruptcy Procedure 3001 "governs the filing of a proof of claim in a bankruptcy proceeding." *Oaks v. Bank One Corp.*, 126 F. App'x 689, 691 (6th Cir. 2005).  Rule 3001(f) provides that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

The Bank filed a proof of claim on July 21, 2010.  On August 23, the bankruptcy court issued an order scheduling a consolidated evidentiary hearing on the Bank's motion for relief from the automatic stay and its objection to confirmation of Miller's amended Chapter 13 Plan.  The court specified that "the major issue to be determined is the amount of the debt, if any, owed by the Debtor to the Bank as of the filing date."  The Bank did not object to this order.

On August 25, Miller filed his third amendment to the Chapter 13 Plan stating that the Bank "shall have no claim in this case" because the Bank's overbid at the Michigan sheriff's sale

extinguished the Bank's claim. Miller cited case law to support his position. On August 30, the Bank filed an amended objection to Miller's third amendment to the Chapter 13 Plan listing four reasons why the amended plan should not be confirmed, but none of the grounds concerned whether Miller had filed an objection to the Bank's proof of claim in accordance with Federal Rule of Bankruptcy Procedure 3007(a).

Prior to the evidentiary hearing, the parties filed legal briefs addressing whether the Bank had a valid claim, whether the Bank could obtain relief from the automatic stay in order to seek relief from the Michigan foreclosure and execute on the Wisconsin judgment, and whether Miller's third amended Chapter 13 Plan should be confirmed. The Bank did not mention in its brief that Miller failed to file a Rule 3007(a) objection to the Bank's proof of claim. The parties then litigated the issues at the evidentiary hearing. During closing argument, the Bank's attorney briefly stated, "We have a proof of claim that has been filed that has never been objected to, to my knowledge." Counsel did not further develop this argument, nor did he cite any legal authorities requiring the bankruptcy court to deem the Bank's claim allowed solely on the basis that Miller failed to file an objection to the proof of claim.

On appeal to the BAP, the Bank sought reversal on several grounds, including that Miller failed to file an objection to the Bank's proof of claim. The BAP ruled that the Bank forfeited the procedural argument by waiting too long to raise it, citing *Kontrick v. Ryan*, 540 U.S. 443, 460 (2004). *See In re Miller*, 459 B.R. at 669–71. Following the BAP's decision, the Bank filed another amended objection to confirmation of Miller's Chapter 13 Plan, stating that "[t]he Plan as amended does not account for the [Bank's] claim which is deemed admitted pursuant to 11 U.S.C. § 502(a) due to the debtor's failure to file an objection thereto."

In *Kontrick*, the Supreme Court held that a debtor forfeits the right to rely on a time period for action set forth in a bankruptcy procedural rule "if the debtor does not raise the Rule's time limitation before the bankruptcy court reaches the merits of the creditor's objection to discharge." 540 U.S. at 446. The Bank attempts to distinguish *Kontrick* on the ground that a time bar is not at issue here.

The principle embedded in *Kontrick*, however, is that a party may not litigate the merits of an issue and later attempt to defeat an adverse decision by asserting the other party's failure to comply with a claim-processing rule. 540 U.S. at 460. *Kontrick* applies here because the Bank waited until the appeal, after the bankruptcy court had ruled on the merits in favor of Miller, to elucidate its argument that Miller failed to file an objection to the proof of claim.

The record demonstrates that Miller clearly notified the Bank in writing of his objection to the Bank's claim when he filed the third amendment to his Chapter 13 Plan and briefed the legal aspects of his position. The Bank did not take advantage of several opportunities to develop an argument in the bankruptcy court that the mandatory consequence of Miller's failure to file a Rule 3007(a) objection is the allowance of the Bank's claim. Instead, the Bank responded to Miller with its own filings and briefs and then litigated the validity of its claim at the evidentiary hearing. Under these circumstances, we are not persuaded to grant the Bank relief from judgment through a belated application of a claim-processing rule. *See Kontrick*, 540 U.S. at 446, 460.

**B. Whether Michigan or Wisconsin law controls the effect of the Bank's credit bid**

The Bank next faults the bankruptcy court for concluding that Michigan law governed the effect of the Bank's credit bid at the Michigan sheriff's sale. Because the promissory notes expressly stated they were governed by Wisconsin law, the Bank argues, the bankruptcy court should have

9

applied Wisconsin law. Further, the Bank contends, Miller possessed at most a claim against the Bank for the surplus that resulted when the Bank entered its high credit bid at the Michigan sheriff's sale. Thus, the bankruptcy court erred in holding that the Michigan foreclosure extinguished a Wisconsin debt secured solely by Wisconsin real estate.

The Bank relies on *State Farm Life Ins. Co. v. Pyare Square Corp.*, 331 N.W.2d 656, 657–58 (Wis. Ct. App. 1983), for the proposition that Wisconsin law applies to its promissory notes. That case, however, supports Miller's position. The promissory notes at issue there were expressly governed by Minnesota law, but the real property was located in Wisconsin, prompting the Wisconsin Court of Appeals to apply its own state's law to hold that a mortgagor did not have the right to reinstate a mortgage in a foreclosure action. *Id.* at 656, 658. Application of *Pyare Square Corporation* requires us to conclude that Michigan law governs the effect of the Bank's Michigan foreclosure by advertisement and sheriff's sale concerning Michigan property even though the notes specify application of Wisconsin law. Thus, *Pyare Square Corp.* does not advance the Bank's position.

As the BAP pointed out, the federal circuits are split on whether state or federal law supplies the choice-of-law rules in bankruptcy cases. *In re Miller*, 459 B.R. at 671 (*comparing Lindsay v. Beneficial Reins. Co. (In re Lindsay)*, 59 F.3d 942, 948 (9th Cir. 1995) (holding federal choice-of-law rules apply and citing cases) *with Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 605–06 (2d Cir. 2001) (holding forum state choice-of-law rules apply and citing cases)). We need not resolve that issue here. *See Jafari v. Wynn Las Vegas, LLC (In re Jafari)*, 569 F.3d 644, 648–51 (7th Cir. 2009) (discussing but declining to resolve circuit split where Nevada law would apply either way)). As the bankruptcy court observed, *In re Miller*, 442 B.R. at 630–333, under either Michigan

10

or Wisconsin law, the Bank's overbid of the full amount of the debt at the Michigan sheriff's sale

extinguished the entire debt.  We agree, relying on cases from Michigan and Wisconsin state courts,

as well as similar cases decided in other state and federal jurisdictions.  *See In re Miller*, 442 B.R.

at 630–32.

In *Pulleyblank v. Cape*, 446 N.W.2d 345 (Mich. Ct. App. 1989) (per curiam), the mortgagees

bid the full amount of the debt owed to them at a foreclosure sale conducted under the Michigan

foreclosure by advertisement statutes.  When the mortgagees realized that the foreclosed property

was worth less than the debt, they tried to foreclose on a second parcel of property and credit the

mortgagor with only the fair market value of the original foreclosed property.  The Michigan Court

of Appeals prohibited the second foreclosure proceeding, holding that the mortgagees, as the

purchasers at the foreclosure sale, stood in the same position as any other purchaser, and because

they bid the full amount of the debt, they were required to apply the entire amount of their bid to the

debt.  *Id.* at 347.  The court noted "[i]t would defy logic to allow [the mortgagees] to bid an inflated

price on a piece of property to ensure that they would not be overbid and to defeat the equity of

redemption and to then claim that the 'true value' was less than half of the value of the bid."  *Id.* at

348.  The court decided that the mortgagees, by their own actions, extinguished the debt by bidding

the full amount of the debt, so that no debt remained to support a second foreclosure on another

property.  *Id.* at 348.

In *Bank of Three Oaks v. Lakefront Properties*, 444 N.W.2d 217, 553 (Mich. Ct. App. 1989)

(per curiam), the mortgagee bank bid $147,129.42, constituting the full amount of the debt plus the

costs of foreclosure and statutory attorney's fees, at the foreclosure sale following a Michigan

foreclosure by advertisement.  When the sheriff's deed became operative at the conclusion of the

redemption period, the bank became the titled owner of the property. Thereafter, the bank sold the property for $150,000. The bank filed suit against the mortgagors to collect an alleged deficiency for the interest, taxes, and insurance premiums accrued between the date of the foreclosure sale and the date the redemption period expired. *Id.* at 554–55. The Michigan Court of Appeals held that "[w]hen property is purchased at a foreclosure sale for an amount equal to the amount due on the mortgage, the debt is satisfied." *Id.* at 555 (citing *Guardian Depositors Corp. v. Hebb*, 287 N.W. 796 (Mich. 1939), and *Powers v. Golden Lumber Co.*, 5 N.W. 656, 657 (Mich. 1880)). Because the debt was extinguished at the foreclosure sale, the court held that the bank could not pursue any deficiency where the mortgagor did not redeem the property. *Id.* at 556–57.

The same legal principles have been applied in other Michigan cases. *See Smith v. Gen. Mortg. Corp.*, 261 N.W.2d 710, 712–13 (Mich. 1978) (per curiam); *Kennedy v. Brown*, 15 N.W. 498, 499–500 (Mich. 1883); *New Freedom Mortg. Corp. v. Globe Mortg. Corp.*, 761 N.W.2d 832, 836 (Mich. Ct. App. 2008); *Emmons v. Lake States Ins. Co.*, 484 N.W.2d 712, 714 (Mich. Ct. App. 1992); *Shoaff v. Estate of Baldwin*, No. 276469, 2008 WL 2597553, at *2 (Mich. Ct. App. July 1, 2008) (unpublished per curiam). Similarly, the Second Circuit applied Michigan law in *Chrysler Capital Realty, Inc. v. Grella*, 942 F.2d 160 (2d Cir. 1991), to hold that a mortgagee who successfully bid the entire amount of the debt at a foreclosure sale could not thereafter maintain an action for damages against the mortgagor, despite the mortgagee's allegations that the actual value of the property at the time of the foreclosure sale was far less than the debt and that the mortgagee had been fraudulently induced into making the transaction.

The governing legal rule is no different in Wisconsin. The Wisconsin Supreme Court has reasoned that, "where the purchaser complains that his overbid [at a foreclosure sale] was the result

of a unilateral mistake, he will be bound by his bid.  Only if he can show the bid was the result of artifice, fraud, or other improper inducement will he be relieved." *Wilson v. Craite*, 210 N.W.2d 700, 703 (Wis. 1973).  The court explained that a purchaser making a unilateral mistake must be held to his bid because he has "full control of his own bid and has the means of ascertaining the property's true value.  Where an overbid is made, which has in no way resulted from deceit, undue influence or other form of fraudulent inducement but is, rather the result of one's own negligence, ignorance or inadvertence, we feel that equity should not intervene." *Id.* Importantly, the court distinguished a purchase overbid from a purchase underbid.  Where a purchaser underbids the price so as to shock the conscience of the court, the trial court may set aside the completed execution sale in order to protect the debtor, "who has little or no control over the amount bid, and to insure that the property being sold is not given away or sold to the prejudice of the debtor." *Id.* at 702.  But "the test used for an underbid is inapplicable to an overbid." *Id.* at 703.  Where the purchaser bids too much for the property, he acts at his own peril and will be held to the amount of his bid. *Id.*

The Wisconsin Court of Appeals followed *Wilson* in *Horicon State Bank v. Kant Lumber Company*, 478 N.W.2d 26 (Wis. Ct. App. 1991).  There a bank purchased a property at a sheriff's sale and later asked the trial court to vacate the sale because the bank learned after it purchased the property that the soil was contaminated with petroleum. *Id.* at 27.  The Wisconsin Court of Appeals reasoned that the bank could have obtained an environmental evaluation prior to the sale, but instead, the bank overbid at the sale, and "[w]e will not intervene if an overbid at a sheriff's sale results from the bidder's ignorance." *Id.* at 28 (citing *Wilson*, 210 N.W.2d at 703).

The Wisconsin Court of Appeals followed both *Wilson* and *Horicon State Bank* in *Metropolitan Life Insurance Company v. James Wilson Associates*, 582 N.W.2d 503, 1998 WL

13

255046 (Wis. Ct. App. May 21, 1998) (unpublished per curiam). There the purchaser's mistake at a sheriff's sale was solely attributable to the purchaser's own negligence. *Id.* at *3. The court of appeals reiterated the rule of *Wilson* and *Horicon State Bank* that "[o]ne who overbids at a sheriff's sale through a unilateral mistake must bear the consequences." *Id.* The court further held that the trial court exceeded its authority when it granted the purchaser's motion to vacate the sale. *Id.*

The Bank has not cited any Michigan or Wisconsin legal authorities to contradict the holdings of these cases. The rule is clear in both jurisdictions that a purchaser who overbids at a sheriff's sale based on a unilateral mistake must accept the consequences of that decision, unless the purchaser can show fraud or other improper inducement in the making the bid. Miller was not involved in the Michigan foreclosure by advertisement, and the Bank has not alleged that Miller or anyone else defrauded the Bank or induced it to overbid the price for the Michigan parcels.

Accordingly, the bankruptcy court did not err in concluding under both Michigan and Wisconsin law that the effect of the Bank's credit bid at the Michigan sheriff's sale was to extinguish the entire debt Miller owed to the bank. *In re Miller*, 442 B.R. at 637. As a result, the Bank may not execute on the Wisconsin foreclosure judgment to recover a debt that no longer exists.

The BAP concluded that the bankruptcy court erred in holding that the extinguishment of the debt meant that the Bank lacked standing to object to Miller's third amended Chapter 13 plan. Instead, the BAP analyzed the issue as a question of setoff and determined that the Bank's credit bid of $413,560.27 in Michigan is set off against the Wisconsin foreclosure judgment in the amount of $407,914.04, thereby satisfying the Wisconsin judgment. *In re Miller*, 459 B.R. at 674–76. We agree with the BAP on this point.

14

**C.  Whether the Bank is entitled to relief from the automatic stay**

The Bank argues that the bankruptcy court should not have decided the issue of whether the Bank's overbid at the Michigan sheriff's sale extinguished Miller's entire debt.  Instead, the court should have lifted the automatic stay for cause or on the ground that the Bank lacked adequate protection.  *See Laguna Assoc. Ltd. P'ship*, 30 F.3d at 737.  Lifting the automatic stay would have allowed the Bank to try to set aside the sheriff's sale in Michigan.  It also would allow the Bank to ask the Wisconsin state courts to determine the effect of the Bank's overbid in Michigan on the Wisconsin foreclosure judgment.

The bankruptcy court may grant relief from the automatic stay "for cause," which includes inadequate protection of  the Bank's interest in collateral, or when the debtor has no equity in the property and the property is unnecessary to reorganization.  *Id.* Because the bankruptcy code does not define what constitutes "cause," courts decide "whether discretionary relief is appropriate on a case-by-case basis." *Id.*

"Michigan courts have long held that statutory foreclosures should not be set aside without very good reason and, thus, have placed the burden of proof upon the party who attempts to impeach them." *United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich. 1997).  "The Michigan Supreme Court requires a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." *Id.* (citing *Detroit Trust Co. v. Agozzinio*, 273 N.W. 747, 748 (1937), and *Calaveras Timber Co. v. Mich. Trust Co.*, 270 N.W. 743, 745 (1936)).  In *Calaveras Timber Company*, 270 N.W. at 454, the Michigan Supreme Court observed that "[h]arsh results may and often do obtain because of mortgage foreclosure sales, but we have never held that because thereof, such sale should be enjoined, when no showing of fraud or irregularity is made."  Similarly, in

15

*Garno*, the court held that the issues raised with regard to the foreclosure sale did not rise to the level of fraud, irregularity, or exigency to justify setting aside the sale. *Garno*, 974 F. Supp. at 633.

Three other Michigan cases cited by the Bank offer little support to its argument. In *Senters v. Ottawa Savings Bank*, 503 N.W.2d 639, 641 (Mich. 1993), the Michigan Supreme Court reaffirmed the general principles that foreclosures by advertisement "are defined and regulated by statute" and that the "mortgage debt is considered paid and the mortgage lien discharged" once the foreclosure sale is complete. *Id.* But *Senters* did not concern a mortgagee's overbid at a foreclosure sale, as occurred in this case. *Senters* ruled only that the purchaser at the foreclosure sale was not entitled to require the mortgagor to pay at redemption the cost of a construction lien the purchaser redeemed earlier. *Id.* at 641–45.

The Bank also cites *Freeman v. Wozniak*, 617 N.W.2d 46 (Mich. Ct. App. 2000) (per curiam), but that case also did not concern a mortgagee's overbid at a foreclosure sale. The trial court set aside a foreclosure sale on the ground that the mortgagor was mentally incompetent during the foreclosure proceedings. *Id.* at 47. The court of appeals reversed and reinstated the sale because the mortgagee had complied with the statutory requirements and the mortgagor made no showing of fraud, accident, or mistake. *Id.* at 48–49. This holding supports Miller.

In addition, the Bank cites *Mitchell v. Dahlberg*, 547 N.W.2d 74 (Mich. Ct. App. 1996), which involved a contract for the purchase of land. There the court recognized that foreclosures are equitable in nature so they may be set aside for fraud or unusual circumstances, *id.* at 724, 726–27, but here the Bank has not alleged, nor could it allege, any fraud on the part of Miller or any other unusual circumstance warranting relief. The bankruptcy court correctly held under the Michigan

16

cases discussed above that the Bank must bear the burden of its own negligence.  *In re Miller*, 442

B.R. at 630–32.

Finally, the Bank points to Michigan Court Rule 2.612(C)(1)(a), which is the Michigan

equivalent of Federal Rule of Civil Procedure 60(b)(1).  The Bank contends that it can argue to a

Michigan court that it is entitled to relief from the sheriff's sale due to mistake or inadvertence.  The

rule provides a basis for relief, however, from a court "judgment, order, or proceeding."  The

Michigan courts clearly characterized foreclosures by advertisement as statutory, not judicial,

proceedings that may be set aside only in very limited circumstances.  *See e.g.*, *Pulleyblank*, 446

N.W.2d at  347–48.

Even if Wisconsin law applies in this case, the Bank has not shown a basis to overturn the

bankruptcy court's decision.  The Bank relies on a Wisconsin statute, § 806.07(1)(a), the counterpart

to Federal Rule of Civil Procedure 60(b)(1), and *Bank of New York v. Mills*, 678 N.W.2d 332 (Wis.

Ct. App. 2004), to argue that a Wisconsin court would grant relief because judicial foreclosure

proceedings are equitable in nature and the trial court retains broad discretion to deny confirmation

of a foreclosure sale if there is an apparent price inadequacy caused by mistake, misapprehension,

or inadvertence on the part of the bidder.

We find at least two flaws in the Bank's argument.  First, even if the Bank were allowed to

present its arguments to a Wisconsin court, the Bank could not present any issue concerning judicial

confirmation of the Michigan foreclosure sale.  The Michigan proceeding was a statutory foreclosure

by advertisement, not a a judicial foreclosure action.  Therefore, court confirmation of the sale is not

relevant.  Second, the Wisconsin Supreme Court made clear in *Wilson* that a trial court has broad

discretion to protect a debtor from a purchaser's underbid at a foreclosure sale, but a purchaser like

the Bank who overbids at a foreclosure sale must face the consequences of its own mistake. Wisconsin equity courts will not intervene to relieve a purchaser from its own negligence. *See Horicon State Bank*, 478 N.W.2d at 28. Thus, even if the Bank argued that its overbid at the Michigan sheriff's sale did not affect its Wisconsin foreclosure judgment, the Wisconsin courts would likely rule under *Wilson* and *Horicon State Bank* that the Bank extinguished the entire debt through its own unilateral mistake in Michigan.

Consequently, the bankruptcy court did not abuse its discretion in holding that the Bank is not entitled to relief from the automatic stay for cause where the Bank no longer has a debt to enforce in Wisconsin state court. For the same reason, we need not reach the Bank's argument that the automatic stay should have been lifted on the ground of lack of adequate protection. The bankruptcy court correctly lifted the automatic stay for the limited purpose of allowing the Bank to dismiss with prejudice the Wisconsin foreclosure judgment. *See In re Miller*, 442 B.R. at 637.

**D. The Bank's due process rights were not violated**

We do not tarry long on the Bank's final contention that the bankruptcy court violated its procedural and substantive due process rights. Our review of the bankruptcy proceedings reveals that the bankruptcy court treated the Bank with complete fairness and gave the Bank every opportunity to present all facts and legal authorities to support its position. Although the Bank criticizes the bankruptcy court for failing to maintain neutrality, there is no evidence in the record that the court was not a neutral arbiter and no evidence that it acted with partiality. Finally, our preceding discussion compels a conclusion that the bankruptcy court did not deprive the Bank of its property—the Wisconsin foreclosure judgment—without due process of law. The Bank bid the

entire amount of its notes and thereby insured that it would not be overbid. The bankruptcy court simply applied the law and required the Bank to bear the consequences of its own bid in Michigan.

## V. CONCLUSION

For all of the reasons stated, we can find no basis to overturn the bankruptcy court's judgment. The Bank forfeited its argument that Miller failed to object to the Bank's proof of claim. Both Michigan and Wisconsin law support the bankruptcy court's conclusion that the Bank's overbid at the Michigan sheriff's sale extinguished the entire debt Miller owed to the Bank. Neither Michigan nor Wisconsin law provides a basis for the Bank to set aside the Michigan foreclosure or to execute on the Wisconsin foreclosure judgment. Lifting the automatic stay only to permit dismissal with prejudice of the Wisconsin judgment was not an abuse of the bankruptcy court's discretion. The bankruptcy court acted fairly and in accordance with the applicable law, and did not deprive the Bank of due process. Accordingly, we **AFFIRM**.